# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      )
                         )
        Plaintiff,      )
                         )
v.                    )    ID Nos. 1709017391 and 1709011924
                         )
                         )
                         )
LUIS CHARRIEZ,      )
                         )
        Defendant.    )

Submitted: February 21, 2020
Decided: September 30, 2020

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED.

Domenic A. Carrera, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Luis Charriez, Howard R. Young Correctional Institution, Wilmington, Delaware, *pro se.*

SALOMONE, Commissioner

This 30th day of September 2020, upon consideration of Defendant's Motion for Postconviction Relief, it appears to the Court that:

## BACKGROUND AND PROCEDURAL HISTORY

1.  In 2017, there were a series of burglaries in Delaware in the same general vicinity of one another involving homes in which the owners were away for a prolonged period of time. The perpetrator of those crimes would enter the home unlawfully, take up residence in the home and then proceed to pawn and sell anything of value in the home. After everything of value within the home was gone, the perpetrator would proceed to rip apart the walls of the home and strip it of its copper piping. The piping was then sold for scrap metal. Once all the copper was removed, the perpetrator would move on to the next house and repeat the entire sequence.

2.  On September 12, 2017, Luis Charriez ("Petitioner" or "Defendant") fled the scene of a traffic stop and discarded a bag containing numerous items which had been stolen from the various residences he had burglarized as well as two cell phones (which were later linked to the Defendant). The driver of the vehicle identified the fleeing suspect from the traffic stop as the Defendant.

3.  After warrants were obtained, Defendant was arrested at Kirkwood Detox on September 26, 2017 in connection with the crime spree. Upon his arrest, Defendant

1

provided a full post-*Miranda* confession to several home burglaries, including some of which were unknown to the police at the time of his arrest.

4. In addition to the confession, the State's evidence of Defendant's involvement in the home burglaries was substantial. The evidence included, among other things, (i) Defendant's fingerprints inside the burglarized homes, (ii) Defendant's DNA found on cigarette butts within the homes, (iii) possession of stolen property from the homes found in his discarded bag from the traffic stop and (iv) possession of wire and pipe cutting tools.

5. Due to the overwhelming evidence against the Defendant, the State provided Defendant with pre-indictment discovery and a pre-indictment plea offer for his consideration. The discovery was provided in full on December 12, 2017. After being afforded ample time to consider the evidence and consult with his attorney with respect thereto, the Defendant accepted the plea offer on March 28, 2018.

6. On April 10, 2018, the plea agreement and recommendations of the parties were accepted by the Court and Petitioner pled guilty to (i) one count of Burglary in the Second Degree and (ii) three counts of Burglary in the Third Degree.[1]

7. On June 26, 2018, the State filed a motion to declare Petitioner a habitual offender pursuant to 11 *Del. C.* §4214(c).

---

[1] Pleas Agreement and TIS Guilty Plea Form, *State v. Luis Charriez, Jr.*, ID Nos. 1709017391 and 1709011924. (Del. Super. Ct. Apr. 10, 2018) (D.I. 3).

8.	On July 18, 2018, despite being represented by counsel at the time, Defendant filed a *pro se* Motion to Withdraw Guilty Plea.[2] After discussion with his counsel, Defendant agreed to withdraw the Motion and proceed with sentencing.

9.	On August 3, 2018, the Court granted the State's application, declared Defendant a habitual offender and sentenced him to an aggregate of 8 years of minimum mandatory Level V incarceration on the Burglary Second habitual offender plea.

10.	Petitioner did not file a direct appeal of his conviction or sentence.

## RULE 61 MOTION

11.	On August 2, 2019, Petitioner filed a *pro se* Motion for Postconviction Relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61"). Petitioner raised four grounds in support of his Motion for Postconviction Relief which can be fairly summarized as follows:

(i)	<u>Ground One: Ineffective Assistance of Counsel for failing to file a Motion to Suppress with respect to an allegedly unlawful arrest</u>. Defendant claims he was unlawfully arrested by police officers who "forced their way into a private medical facility without a search warrant, where the [Petitioner] was seeking medical attention."[3]

---

[2] Defendant asserts nearly identical claims in his Motion to Withdraw Guilty Plea as those set forth in this Motion for Postconviction Relief.

[3] Def.'s Rule 61 Mot., at 3.

(ii)    <u>Ground Two: Ineffective Assistance of Counsel for failing to file a Motion to Suppress with respect to alleged violations of Defendant's Fourth Amendment Right to privacy</u>. Defendant claims that his right to privacy was violated when police officers obtained his location prior to his arrest by unlawfully placing a tracking devise on this phone.[4]

(iii)    <u>Ground Three: Ineffective Assistance of Counsel for failing to file a Motion to Suppress with respect to alleged violations of HIPPA laws</u>. Defendant claims his HIPPA rights were violated when the police "forcefully entered a private medical facility where [Petitioner] was seeking treatment" and that he had an expectation of privacy when seeking medical treatment.[5]

(iv)    <u>Ground Four: Ineffective Assistance of Counsel for failing to file a Motion to Suppress regarding evidence gathered during an allegedly illegal arrest</u>. Defendant asserts that his "confession and any evidence gathered during the illegal arrest are fruit from a poisonous tree" and that his defense counsel refused to file motions to suppress each of the foregoing.[6]

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

4

12. On November 18, 2019, the Court ordered that the record be expanded and directed Petitioner's prior defense counsel, Raymond D. Armstrong, Esquire, to respond to Petitioner's ineffective assistance of counsel claims.

13. On January 17, 2020, defense counsel filed an Affidavit in Response to Petitioner's claims of ineffective assistance of counsel denying those claims.

14. On February 21, 2020, the State filed its Response to Petitioner's Motion for Postconviction Relief.

15. The Defendant did not file a Reply to either defense counsel's Affidavit or the State's Response.

## LEGAL ANALYSIS OF CLAIMS

16. Before considering the merits of the claims, the Court must first determine whether there are any procedural bars to the Rule 61 Motion.[7] Pursuant to Super. Ct. Crim. R. 61(i)(3) and (4), any ground for relief that was not previously raised is deemed waived, and any claims that were formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, are thereafter barred.[8] However, ineffective assistance of counsel claims cannot be raised at any earlier

---

[7] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[8] *See* Super. Ct. Crim. R. 61(i)(5) and (d)(2)(i), (ii).

5

stage in the proceedings and are properly presented by way of a motion for postconviction relief.[9]

17. This is Petitioner's first motion for post-conviction relief and it was timely filed.[10] The Defendant filed his *pro se* Rule 61 Motion on August 2, 2019, which was within one year of his conviction becoming final. Therefore, no procedural bars prevent the Court from reviewing this Rule 61 Motion on the merits.

18. In order to prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong standard set forth in *Strickland v. Washington.*[11] This test requires the petitioner to show: (a) counsel's deficient performance, *i.e.*, that his attorney's performance fell below "an objective standard of reasonableness,"[12] and (b) prejudice.[13]

19. Under the first prong, judicial scrutiny is highly deferential. Courts must ignore the distorting effects of hindsight and proceed with a strong presumption that counsel's conduct was reasonable.[14] The *Strickland* Court explained that a court

---

[9] *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Apr. 28, 2016); *State v. Evan-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Aug. 25, 2016).

[10] *See* Super. Ct. Crim. R. 61(i)(1) (motion must be filed within one year of when conviction becomes final); Super. Ct. Crim. R. 61(m)(2) (If the defendant files a direct appeal, the judgment of conviction becomes final when the mandate is issued).

[11] *Strickland v. Washington*, 466 U.S. 668 (1984).

[12] *Id.* at 688.

[13] *Id.* at 694.

[14] *Id.* at 689.

6

deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.[15]

20.     Under the second prong, in order to establish prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome."[16] In other words, not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.[17] The court must consider the totality of the evidence and must ask if the movant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.[18] "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[19]

---

[15] *Id.* at 690.

[16] *Id.* at 694.

[17] *Id.* at 693.

[18] *Dale v. State*, 2017 WL 443705, * 2 (Del. 2017); *Strickland v. Washington*, 466 U.S. 668, 695-696 (1984).

[19] *Cooke v. State*, 977 A.2d 803, 840 (Del. 2009)(quoting *Strickland*, 466 U.S. at 686).

7

21.    In the context of a plea challenge, it is not sufficient for the defendant to claim simply that his counsel was deficient.  The defendant must also establish that counsel's actions were so prejudicial that there was a reasonable probability that, but for counsel's deficiencies, the defendant would not have taken a plea but would have insisted on going to trial.[20]

22.    The burden of proving ineffective assistance of counsel is on the defendant.[21] Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[22]

### The Ineffective Assistance of Counsel Claims Are Without Merit

23.    The Court finds each of Petitioner's ineffective assistance of counsel claims to be without merit because each claim has no basis in fact.  As such, there was no basis for defense counsel to file a motion to suppress with respect to any of the issues asserted by Defendant.

24.    Defendant's assertion that he was unlawfully arrested by police officers who "forced their way into a private medical facility without a search warrant" (Ground One) is untrue.  The police obtained arrest warrants for Defendant prior to his arrest

---

[20] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Hickman v. State*, 1994 WL 590495 (Del.) (applying *Strickland* to guilty pleas).

[21] *Oliver v. State*, 2001 WL 1751246 (Del.).

[22] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

8

on September 26, 2017.[23] Defendant was made aware of the arrest warrants through pre-indictment discovery.[24]

25. Defendant's assertion that the police obtained his location on the day of his arrest through an unlawful tracking device placed on his phone (Ground Two) is also factually untrue. The Defendant's girlfriend contacted the police and advised them that the Defendant had checked himself into Kirkwood Detox.[25] The police obtained possession of Defendant's phone when he discarded it while fleeing from the police after the traffic stop on September 12, 2017.[26] The Defendant was not in possession of his cell phone when he was arrested on September 26, 2017.[27] Accordingly, the police could not have utilized any kind of phone tracking device to determine his whereabouts.

26. Defendant's assertion that his HIPPA rights were violated when police entered Kirkwood Detox where he was seeking treatment (Ground Three) is likewise untrue. As previously noted, the police had a valid arrest warrant on the day of Defendant's arrest. Moreover, the Defendant did not raise the issue of the alleged

---

[23] D.I. 16.

[24] *Id.*

[25] D.I. 14.

[26] *Id.*

[27] *Id.*

HIPPA violation with counsel until July 19, 2018, which was after he pled guilty.[28] After discussion of the merits of this claim with defense counsel, the Defendant determined not to pursue the issue and instead to proceed with sentencing.[29] The Defendant provided counsel with the name of his contact at the ACLU (with whom Defendant had discussed the alleged HIPPA violation), whom counsel called and spoke with the same day.[30] Counsel's contemporaneous notes from that call also reflect that the ACLU was not interested in Defendant's case.[31]

27. And finally, Defendant's "fruit of the poisonous tree" argument (Ground Four) is equally unfounded in light of the facts referenced above. Defense counsel is not obligated to bring suppression motions on Defendant's behalf which are not based in fact. Accordingly, the failure to file such motions cannot form the basis for or otherwise support Defendant's claim for ineffective assistance of counsel.

28. Prior to the plea, the Defendant had ample time to review the discovery related to how the State intended to prove the alleged crimes. Defense counsel reviewed and discussed the evidence against the Defendant, including his confession and his fingerprints being found at the crime scenes.[32] Based on the totality of the evidence,

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

10

it is readily apparent to the Court that counsel determined that a plea agreement was in the Defendant's best interest and made the strategic choice to pursue that route on behalf of his client.

29. "If an attorney makes a strategic choice 'after thorough investigation of law and facts relevant to plausible options' that decision is 'virtually unchallengeable' and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[33]

30. Based on the foregoing, the Court finds that counsel's performance was objectively reasonable under the circumstances, and, as such, Petitioner fails to establish the first prong of the *Strickland* test. Having so concluded, the Court need not examine the second prong of the *Strickland* test.

31. Even assuming *arguendo* that counsel's performance had been deficient in some way (which the Court does not find), the Defendant ***pled guilty*** to the charges. As the Delaware Supreme Court has previously held, "a voluntary guilty plea constitutes a waiver of any alleged errors or defects occurring prior to the entry of

---

[33] *Ploof v. State*, 75 A.3d 840, 852 (Del. Supr. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).

11

the plea."[34]    This includes any claims that counsel failed to file a motion to suppress.[35]

32.    The Defendant does not allege nor does the Court find that his plea was the result of coercion.   Rather, the Court finds that the Defendant entered his plea knowingly, intelligently and voluntarily as evidenced by his execution of the Truth in Sentencing Guilty Plea form and plea colloquy. [36]

33.    Absent evidence to the contrary, a defendant is bound by those representations made when pleading guilty.[37]  "[A] Defendant's statements to the Superior Court during the guilty plea colloquy are presumed to be truthful. Those contemporaneous representations by a defendant pose a formidable barrier in any subsequent collateral proceedings."[38]

34.    Moreover, Defendant's acceptance of the plea represents a rational decision by him to avoid a trial where the downside could have resulted in a significantly greater prison sentence if convicted. Prior to acceptance of the plea, the Defendant

[34] *Cooper v. State*, 2008 WL 2410404, at *1 (Del. 2008); *Miller v. State*, 840 A.2d 1229, 1232 (Del. 2004).

[35] *Cooper v. State*, 2008 WL 2410404, at *1.

[36] D.I. 3.

[37] *Palmer v. State*, 2002 WL 31546531, at *1 (Del. 2002) (citing *Somerville v. State*, 703 A.2d629, 632 (Del. 1997).

[38] *Somerville*, 703 A.2d 629, 632 (Del. 1997).

was facing a minimum of 9 years and a potential sentence of up to 52 years and 210 days at Level V if convicted of all of the indicted offenses. In the event the Defendant was declared a habitual offender on the eligible defenses, he faced a minimum mandatory sentence of 24 years to life at Level V. Defendant obtained a benefit by entering into the plea in that the remaining charges were *nolle prossed* and the prosecution agreed to recommend an aggregate of eight years minimum mandatory Level V time on his Burglary Second habitual offender plea.

35. In conclusion, Petitioner's plea represented a rational choice given the pending charges, the evidence against him, and the possible sentences he was facing. Petitioner entered into his plea knowingly, intelligently and voluntarily. The Court finds that counsel was not deficient in any respect in his representation of the Defendant. Defendant's ineffective assistance of counsel claims are without merit.

For all of the foregoing reasons, Petitioner's Motion for Postconviction Relief should be DENIED.

**IT IS SO RECOMMENDED.**

The Honorable Janine M. Salomone

cc:    Prothonotary
       Dominic A. Carrera, Esquire, Deputy Attorney General
       Raymond D. Armstrong, Esquire
       Mr. Luis A. Charriez, *pro se* (SBI No. 00295002)

13